```
       IN THE UNITED STATES DISTRICT COURT FOR THE
              SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

**CARL A. MITCHELL, AIS # 131412,:**

    **Plaintiff,**                              :

**vs.**                                        :     CIVIL ACTION 03-00870-CB-B

**RANDALL LUCAS, et al.,**         :

    **Defendants.**                          :


## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and *in forma pauperis,* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 22, 23, 36, and 42). For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice.

**I.   SUMMARY OF ALLEGATIONS**

Based upon a review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation. While incarcerated at Fountain Correctional Facility ("Fountain"), Plaintiff, on July

4, 2002, smoked a marijuana cigarette[1] (Doc. 9 at 16, Doc. 13 at 6).  Plaintiff contends that the effects of the marijuana caused him to act in an "in sensible [sic] manner" and to say "loudly things I don't usually say." (Id.).  According to Defendants, Plaintiff was "yelling about Jesus while walking back and forth across the dorm." (Doc. 9, pg. 3).  Correctional Officer David Black advised Lieutenant Albert Williams, via radio, of Plaintiff's bizarre behavior.  In response thereto, Lt. Williams, along with Correctional Officers Randall Lucas and William Sheets, proceeded to Plaintiff's cell in order to remove and transport him to the health care unit.  Lt. Williams instructed Officer Donald Barlow to place Plaintiff in handcuffs so he could be transported to the health care unit (Id.).  At the health care unit, Plaintiff was placed in the "safe cell"[2] until the Doctor could personally observe him[3]. (Doc. 9, pg. 4).  Plaintiff acknowledges that he was still talking in a loud manner at this point (Doc. 13, pg. 6).  Lt. Williams had the

---

[1] Possession of marijuana is a violation of Department of Corrections regulations.

[2] A "safe cell" is a cell containing only a mattress, a safety tunic and a sack lunch (Doc. 9, pg. 4).

[3] The doctor advised the nurse on duty, via telephone, to have Plaintiff placed in the safe cell until he had an opportunity to observe him.

2

handcuffs removed from Plaintiff's wrists, and ordered him to remove his clothing.  Plaintiff questioned why it was necessary for him to remove his clothing and refused to do so.  In his affidavit, Plaintiff avers that he did not think he should be forced to undress in front of a female correctional officer.  (Id. at pg. 8).  Plaintiff also questioned the correctional officers about the reason he was being placed in the safe cell (Id.).  After Plaintiff repeatedly refused Lt. Williams' order to remove his clothing, Lt. Williams attempted to remove Plaintiff's clothing, and Plaintiff began to strike Lt. Williams in the jaw three or four times with a closed fist. (Doc. 9, pgs. 4, 31, 36, 38-39).  Officer Black then entered the cell and attempted to pull Plaintiff off of Lt. Williams.  As he did so, Plaintiff began to strike out at both officers (Doc. 9 at 4).  Officer Lucas then entered the cell and struck Plaintiff on the arm with his baton in order to bring him under his control.  Once subdued, the officers handcuffed Plaintiff and left him in the safe cell fully clothed (Id., Doc. 1, pg. 5).  Plaintiff continued to be combative until Warden Culliver arrived approximately two hours later and escorted Plaintiff out of the safe cell to be examined (Doc. 9, pg. 4).  During the examination, it was discovered that Plaintiff's wrist had been broken in the struggle.  Surgery was required to repair

Plaintiff's wrist, which was set with two metal pins and six stitches (Id.)[4].

On December 22, 2003, Plaintiff filed suit against Correctional Officer Lucas and Lt. Williams (Doc. 1). Plaintiff alleges that both Defendants violated his 8th and 14th Amendment rights. Each defendant is being sued in their official and individual capacities (Doc. 1, pg. 5).

In the Special Report and Answer filed on behalf of Defendants[5] on May 24, 2004, Defendants deny Plaintiff's allegations of constitutional rights violations and assert the defenses of sovereign and qualified immunity (Doc. 9). Furthermore, Defendants respond that they used only the amount of force necessary to restrain and control Plaintiff, thereby barring Plaintiff's Eight Amendment claim (Doc. 9, pgs. 2-3).

On November 29, 2004, the Court ordered that Defendants' Special Report and Answer be treated as a Motion for Summary Judgment (Doc. 10). The Court advised Plaintiff that he could

---

[4] Plaintiff makes no allegations of inadequate medical care or treatment.

[5] Defendant Randal Lucas is currently deployed in the Iraq vicinity. Therefore, Defendant Lucas has not been served with the Complaint (Doc. 9, pg. 10-11, Affidavit of Warden Jerry Ferrell). However, after taking Plaintiff's allegations as true, the Court finds no constitutional violations and Plaintiff's claims against Defendant Lucas are **DISMISSED.**

file a response to the motion, and on January 28, 2005, Plaintiff filed a brief in opposition to Defendants' Motion for Summary Judgment, as well as several affidavits, reasserting the claims alleged in his Complaint (Docs. 13, 14, 15).

II.   **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A factual dispute is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  Moreover, what are considered to be the "'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes."  Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and, in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Tipton, 965 F.2d at 998-99. In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

Once the movant satisfies its initial burden under Rule 56(c), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986) (emphasis omitted).  "'[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Tipton, 965 F.2d at 999 (quoting Anderson, 477 U.S. at 255).  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587.

Moreover, the non-movant bears "the burden of coming forward with sufficient evidence on *each element* that must be proved."  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) (emphasis in original).  If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**III.  DISCUSSION**

In this action, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising

7

from force used to subdue him on July 4, 2002, while he was incarcerated at Fountain prison. For the reasons set forth below, the Court finds that Plaintiff's allegations fail to establish any constitutional violation by Defendants; thus, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED**.

In his Complaint, Plaintiff names Lt. Williams and Correctional Officer Lucas as defendants in this case. He asserts that they used excessive force against him in trying to remove his clothing once he was placed in the safe cell. In order to state a claim upon which relief can be granted in a § 1983 action, a Plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights. Boglin v. Weaver, 2001 WL 228172, *14 (S.D. Ala. 2001).

Plaintiff claims that Defendants Williams and Lucas violated his Eighth and Fourteenth Amendment rights in that they broke his wrist while attempting to subdue him in the safe cell.[6] Defendants deny Plaintiff's allegations of excessive

---

[6] Despite Plaintiff's reference to alleged violations of both the Eighth and Fourteenth Amendments, it is the Eighth Amendment that applies here, as Plaintiff is a convicted prisoner. Further, "the standard for providing basic human

force and assert the defenses of sovereign and qualified immunity.[7]

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

---

needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001) (en banc). Therefore, only the Eighth Amendment is addressed herein.

[7] Plaintiff states he is suing defendants in their official and individual capacities (Doc. 1, at 5). As state officials, Defendants are absolutely immune from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the Plaintiffs, show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

>     be liable to the party injured in an action
>     at law, suit in equity, or other proper
>     proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

In addressing an excessive force claim brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed by the challenged application of force."  Graham v. Connor, 490 U.S. 386, 394 (1989). Because Plaintiff has been adjudicated guilty of a crime and is serving a sentence of confinement, the Eighth Amendment, which attaches "after conviction and sentence," applies to this case and protects Plaintiff from punishment that is cruel and unusual.  Graham, 490 U.S. at 392 n.6; see also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense."  Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim, a Plaintiff must prove both an objective and subjective component. First, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, Plaintiff must show that "the officials

act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously or sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-8 (1992).  Analysis of an Eight Amendment claim of use of excessive force is contextual and requires that many factors be considered: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible official, any efforts to temper the severity of a forceful response, and the extent of injury suffered.  Only *de minimis* uses of force are beyond the constitutional recognition of the Eight Amendment.  Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996).

Considering the evidence in the light most favorable to Plaintiff, the question is whether a jury could reasonably conclude that Defendants violated Plaintiff's rights under the Eighth Amendment.  Under the circumstances of this case, the Court finds that Plaintiff's allegations fail to establish a constitutional violation.  Plaintiff herein admits that he smoked a marijuana cigarette, and that the effects of such made him act in a insensible manner, including yelling loudly in his cell.  (Doc. 13, pg. 6).  Plaintiff states that he "had unconsciously began acting loudly vocally [sic], and was doing so because I was under the drugs (insensible) [sic] influences."

11

(Doc. 15, pg. 2). Once Defendants and other officers arrived at Plaintiff's cell to transport him to the health care unit, he was still talking in a loud manner (Id.). Plaintiff acknowledges that once at the health care unit, he refused repeated orders to unclothe (Id. At 7). Instead of obeying the officers' directives, Plaintiff questioned why he was being told to remove his clothing. After refusing to remove his clothes and continuing to speak in a belligerent manner towards the officers, Defendant Williams attempted to remove Plaintiff's clothing. In his affidavit, Plaintiff does not dispute that a struggle ensued, or that he struck Defendant Williams several times (Doc. 15, pg. 7). Plaintiff in essence contends that Defendant Williams provoked the struggle by attempting to force him to disrobe in front of a female officer. While Plaintiff contends that Defendants' use of force and his resulting wrist injury amounted to a constitutional violation, the undersigned disagrees.

In assessing the factors enumerated above, specifically, the threat reasonably perceived by Defendants, the need for the use of force, and Defendants' motive in using force, it is evident that Plaintiff's bizarre behavior in speaking loudly and yelling justified the Defendants and other officers' decision to remove Plaintiff from the general population and place him in a safe cell. Then, when Plaintiff repeatedly refused to obey

orders to disrobe, he created a situation which undermined Defendants' goal of placing Plaintiff in a safe cell for evaluation.  Likewise, when Plaintiff forcefully struck and injured Defendant Williams, a real and substantial threat to his safety arose.  As the Supreme Court has stated, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force.  Despite the weight of these competing concerns, corrections officer must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" Hudson v. McMillian, et al., 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992), quoting Whitley v. Abers, 475 U.S. 312, 320 (1986).  Thus, the need for the use of force in order to secure Defendant Williams' safety and to handcuff Plaintiff so that no further damage or injury could occur was present, and there is no indication that Defendant Lucas' motives in doing so was anything other than a good faith effort to maintain security and restore order when being faced with a situation in which immediate action was needed.  Defendant Lucas did not err in applying force to defuse the situation.  Furthermore, at that point, Defendant Williams was injured and was unable to use any force whatsoever against Plaintiff.

With respect to the amount of force used, particularly

13

Defendant Lucas' use of his baton, the Court is mindful that, while an inmate must be protected from the "unnecessary and wanton infliction of pain by prison officials," prison officials must maintain order and discipline "in an often dangerous and unruly environment."  Ort, 813 F.2d at 321-22 (internal quotations omitted).  Thus, prison officials must be extended deference in acting to insure the proper administration, safety, and security of a penal institution.  Id.   "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."  Id. at 323.  With these considerations in mind, the Court finds that Defendant Lucas' use of the baton was applied for the purpose of restoring order and was not excessive.  Indeed, in the face of the grave possibility of further harm to Defendant Williams, such force was necessary.  Of course, immediately following Plaintiff's blows to Defendant Williams' jaw, Defendant Williams was not in a position to protect himself, let alone observe Defendant's Lucas' actions to protect him from further harm. Considering all of the factors enumerated above, Plaintiff's allegations simply do not support his claim that he was subjected to excessive force.

14

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. Celotex Corp., 477 U.S. at 322. "No material issues can be in dispute where the Plaintiff's evidence fails to establish a constitutional violation." Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990). Therefore, since no constitutional violation has been established, Defendants' Motions for Summary Judgment are due to be granted.

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED** and that the entirety of Plaintiff's Complaint against Defendants be **DISMISSED** with prejudice.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this **20th** day of **September 2005**.

　　　　　　　　　　　　　　　　　　/s/ SONJA F. BIVINS
　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.  **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)©; <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.  **<u>Transcript (applicable where proceedings tape recorded)</u>**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in

16

this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

<u>S/ Sonja F. Bivins</u>
UNITED   STATES   MAGISTRATE   JUDGE